IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:22-CR-386 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | |
| | ) | |
| CURTIS ANDERSON, | ) | GOVERNMENT'S CONSOLODATED |
| | ) | TRIAL BRIEF AND MOTIONS *IN* |
| Defendant. | ) | *LIMINE* |

Now comes the United States of America, through its undersigned counsel, hereby

submitting this consolidated trial brief and motions *in limine*. Below, the government addresses

the following issues:

### Contents

I. SUMMARY OF GOVERNMENT'S EVIDENCE ............................................................2

    A. EARL KING TRIES TO SMUGGLE APPROXIMATELY $150,000 IN CASH ON A FLIGHT FROM CLEVELAND, OHIO TO BROWNSVILLE, TEXAS ON JUNE 18, 2021.................................................................................................2

    B. LAW ENFORCEMENT INTERCEPT A UPS PACKAGE CONTAINING ELEVEN KILOGRAMS OF COCAINE SHIPPED FROM BROWNSVILLE TO CLEVELAND ON JUNE 19, 2021.......................................................................3

    C. LAW ENFORCEMENT SEARCH EARL KING'S APARTMENT ON JULY 1, 2021 AND FIND EVIDENCE OF AN ONGOING DRUG SMUGGLING CONSPIRACY ON KING'S CELL PHONES, INCLUDING MESSAGES WITH CURTIS ANDERSON ABOUT DRUG PARCELS.................................................4

    D. LAW ENFORCEMENT FIND ADDITIONAL EVIDENCE OF CURTIS ANDERSON'S INVOLVEMENT ON HIS IPHONES, WHICH WERE TAKEN DURING HIS FEDERAL ARREST IN THIS CASE ON OCTOBER 12, 2022. ..8

II. TRIAL ISSUES AND *MOTIONS IN LIMINE* ................................................................12

    A.    THE WEB SEARCH HISTORY ABOUT DRUG TRAFFICKING FROM ANDERSON'S IPHONES (EXHIBITS 156 AND 159) ARE ADMISSIBLE AS *RES GESTAE*, OR ALTERNATIVELY, UNDER FRE 404(B). .........................12

        1.    There is sufficient evidence that the acts occurred, and that Anderson was the person responsible for those acts. ........................................................14

        2.    The items are admissible for proper purposes, namely, to establish Anderson's intent to distribute the cocaine packages shipped during the conspiracy, and to establish his knowledge that the parcels contained drugs.......................................................................................................15

        3.    The probative value of the search histories is not substantially outweighed by any risk of unfair prejudice. ..................................................................17

    B.    THE GOVERNMENT INTENDS TO SELF-AUTHENTICATE BUSINESS RECORDS AND CELL PHONE EXTRACTIONS. ...........................................18

    C.    STIPULATIONS ...................................................................................................18

    D.    LENGTH OF TRIAL.............................................................................................18

# I.    SUMMARY OF GOVERNMENT'S EVIDENCE

## A.    EARL KING TRIES TO SMUGGLE APPROXIMATELY $150,000 IN CASH ON A FLIGHT FROM CLEVELAND, OHIO TO BROWNSVILLE, TEXAS ON JUNE 18, 2021.

On June 18, 2021, HSI agents responded to the Cleveland Hopkins Airport after TSA located approximately $150,000 in cash concealed in the checked luggage of Earl King, who was flying from Cleveland to Brownsville, Texas (Brownsville is on the U.S.-Mexico border). HSI Task Force Officer John Dlugolinski responded and took possession of King's luggage. TFO Dlugolinski determined that the cash was concealed inside of a desktop computer tower in King's luggage. The total amount was $154,850. King managed to board his flight before law enforcement could stop him. Notably, King was on federal supervised release in the Northern District of Ohio at the time. A photo of the cash inside the desktop computer tower is copied below:



B.     <u>LAW ENFORCEMENT INTERCEPT A UPS PACKAGE CONTAINING ELEVEN KILOGRAMS OF COCAINE SHIPPED FROM BROWNSVILLE TO CLEVELAND ON JUNE 19, 2021.</u>

A few days later, on June 24, 2021, UPS contacted the DEA about a suspected drug package at the UPS facility in Highland Heights, Ohio.  The suspected drug package had been shipped from the UPS/Staples store in Brownsville, Texas on June 19, 2021.  According to the address label, the parcel had been sent by "Jeffrey Jones" of Brownsville, Texas, with a phone number ending in -9071, and was addressed to "Jeffrey Jones Jr." at "Catalpa Road, Cleveland, OH 44122."  UPS was unable to deliver the parcel because it did not have any street address on the address label—it only listed "Catalpa Road."  DEA obtained a search warrant for the parcel and found that it contained eleven kilogram bricks of suspected cocaine.  The cocaine bricks were hidden inside of a desktop computer tower, which was the same method that Earl King had used to try and smuggle the $150,000 in cash on June 18, 2021.  A lab chemist with the DEA confirmed that the substance was cocaine, a Schedule II controlled substance, with a net weight

of approximately eleven kilograms.  A photograph of the cocaine from the UPS package, with

the desktop computer tower in the background, is copied below:



      C.       <u>LAW ENFORCEMENT SEARCH EARL KING'S APARTMENT ON JULY 1, 2021 AND FIND EVIDENCE OF AN ONGOING DRUG SMUGGLING CONSPIRACY ON KING'S CELL PHONES, INCLUDING MESSAGES WITH CURTIS ANDERSON ABOUT DRUG PARCELS.</u>

After seizing the $150,000 in cash from Earl King's luggage on July 18, 2021, HSI

notified King's federal probation officer in the Northern District of Ohio.  Then on July 1, 2021,

the U.S. Probation Office conducted a search at King's apartment on Puritas Avenue in

Cleveland.  HSI Special Agent Wesley Wood accompanied the federal probation officers during

the search of King's apartment.  King was present at the apartment when law enforcement

arrived.  No one else was inside.  As a result of the search, the probation officers located seven

cell phones and approximately two grams of suspected cocaine in King's apartment.  The

probation officers subsequently turned over the cell phones to HSI, who obtained a federal warrant to search them.

HSI Special Agent Matthew Kampman, who is the government's primary case agent, reviewed the contents of King's seven cell phones, and found that the phones contained evidence of an ongoing conspiracy to smuggle bulk quantities of cocaine from Brownsville to Cleveland. More specifically, King had been messaging with a contact named "Rooster," who law enforcement later identified as codefendant Dionicio Galindo-Salinas. The messages between King and Rooster indicated that King would travel from Cleveland to Brownsville to meet Rooster, who would in turn supply King with kilograms of cocaine. King would then ship the cocaine back to the Cleveland area via UPS parcels sent from the Brownsville UPS/Staples store. The messages found on King's cell phones with Rooster were a mix of text messages and audio or video messages. One of the video messages, which Rooster sent King on May 22, 2021, showed a person cutting open a kilogram brick of what appeared to be cocaine.

A subsequent comparison of King's flight records, UPS records, and IP address records confirmed that King was shipping the drug boxes from Brownsville, and that Curtis Anderson would track the delivery status of those parcels. In particular, flight records showed that King would fly to Brownsville, and then return to Cleveland after a short stay in Brownsville. While King was in Brownsville, a UPS box would be shipped from the Brownsville Staples/UPS store to one of two addresses in Cleveland: either 1745 Catalpa Road or 7502 Central Avenue. Curtis Anderson's AT&T home internet account would then track the delivery status of those packages multiple times.

As law enforcement continued to review the cell phones taken from King's apartment by the probation officers on July 1, 2021, they noticed a number of messages on King's phones with

a contact named "Coody" who had a phone number of 216-309-5016 (later identified as Curtis Anderson). Notably, the -5016 number was listed as one of the call-back numbers on Anderson's AT&T home internet account that was tracking the delivery status of the UPS packages. Those text messages between King and the -5016 "Coody" number (Curtis Anderson) appeared to reference the drug parcels that King was shipping from Brownsville and how Anderson was keeping track of them. Some of those messages between King and the -5016 "Coody" (Anderson) number, which were found on King's cell phones, are copied below (with notes on how the messages coincided with the UPS drug parcel shipments from Brownsville to Cleveland):

- On February 20, 2021, Anderson texted, "I'm cool imma just give 15000 yall figure that shit . . . Bruh don't call me no more just drop my money off at my mom house." King replied, "the flight board at 4:40." Notably, flight records showed that King had traveled from Cleveland to Brownsville on February 20, 2021, with a departure time of 5:10 p.m. And UPS records showed that a parcel had been shipped from the UPS/Staples store in Brownsville to 7502 Central Avenue in Cleveland the following day (February 21, 2021). IP records showed that Curtis Anderson's AT&T account tracked the delivery status of that parcel 22 times between February 22, 2021 and February 23, 2021. Then on February 23, 2021, Anderson sent King a text message saying, "Somebody stole the package." On February 24, 2021, Anderson sent King another text message that said, "I know u seen my text it's cool how u ain't called or holler at me allday shit seem weird but it's cool trust me." Approximately two weeks later, on March 11, 2021, Anderson sent King another text message that said, "Shit seem fishy to me I'm cool just stay yo distance y'all got me fucked up I telling you know

whoever took my shit gone be dead." On March 12, 2021, Anderson sent King another series of text messages that said, "Rush me my money dude . . . Dude I know you booked the pack bring me my ASAP or it's gone be a problem."

- On April 20, 2021, Anderson sent King a text message that read, "What's good." King replied, "I'm here . . . You on your way . . . Im good I got cab." Anderson texted, "they claim it's a delay with the package." Notably, King had traveled to Brownsville two days earlier, on April 18, 2021, and had shipped a 14-pound parcel from the Brownsville UPS/Staples store to 1745 Catalpa Road. Curtis Anderson's IP addressed tracked the delivery status of that UPS parcel 11 times between April 19 and April 20, 2021.

- On June 22, 2021 (three days after the eleven kilogram cocaine package had been shipped from the UPS/Staples store in Brownsville to "Catalpa Road" in Cleveland with no house number on the address label), Anderson sent King a text message that said, "Wrong address." Anderson attached a screenshot of what appeared to be a UPS tracking notification saying, "*The street number is incorrect. This may delay delivery. We're attempting to update the address.*" Anderson's screenshot to King also contained some tracking information for the cocaine parcel, showing that it had arrived at the UPS facility in Highland Heights, Ohio. Those messages appeared to be Anderson notifying King that the drug parcel was not able to be delivered, since King had forgotten to put a house number on the address label.

In total, law enforcement were able to identify twelve UPS parcels that had been shipped from the Brownsville UPS/Staples store to either 1745 Catalpa Road or 7502 Central Avenue in Cleveland between November 2020 and June 2021 (including the eleven kilogram cocaine

parcel).  Except for the first parcel shipped on November 4, 2020, the other 11 parcels each coincided with a flight that Earl King took from Cleveland to Brownsville, which was during the same time frame that King was messaging with Rooster about obtaining kilograms of drugs at the border.  And with one exception, Curtis Anderson's home AT&T internet account tracked the delivery status of each one of those drug parcels multiple times.

As part of the investigation, law enforcement also obtained flight records for Curtis Anderson, which showed that Anderson flew to McAllen, Texas on June 26, 2021 (two days after the DEA seized the eleven kilogram cocaine parcel), and then flew from McAllen to Cleveland one day later.  McAllen is also located on U.S.-Mexico border, approximately one hour west of Brownsville.  Notably, on June 25, 2021 (the day before Anderson flew to McAllen for the one-day trip), King texted Anderson a screenshot of King's federal supervised release violation report, which is consistent with King notifying Anderson that King would not able to travel to the border to meet the supplier, Rooster, anymore.  Additionally, King had also previously texted Anderson the contact information for "dionico a galrndo" (Rooster) on March 23, 2020, which further indicates that Anderson was traveling to the border to meet with Rooster about the seized drugs following King's probation violation.

D.    <u>LAW ENFORCEMENT FIND ADDITIONAL EVIDENCE OF CURTIS ANDERSON'S INVOLVEMENT ON HIS IPHONES, WHICH WERE TAKEN DURING HIS FEDERAL ARREST IN THIS CASE ON OCTOBER 12, 2022.</u>

Based on the evidence outlined above, a federal indictment was issued against Anderson, Galindo-Salinas (Rooster), and Donnell Gochette (who was also texting with King about the drug parcels), charging one count of conspiracy to distribute and possess with intent to distribute cocaine.  Gochette has pled guilty and been sentenced.  Galindo-Salinas is currently a fugitive. Earl King was charged in a separate indictment (1:21-CR-606), which was assigned to Judge Boyko.  King pled guilty and was sentenced to 180 months in prison.

On October 11, 2022, the East Cleveland Police Department took Curtis Anderson into custody on the federal warrant during a traffic stop, and then notified HSI about the arrest. HSI SA's Kampman and Woods went to the East Cleveland Police Department the following day, October 12, 2022, to take custody of Anderson and bring him to federal court for his initial appearance on the indictment. Upon arrival at East Cleveland, SA Kampman took custody of Anderson's two iPhones, which had been taken during Anderson's arrest and placed with Anderson's personal property. SA Kampman spoke to Anderson, who confirmed that the two iPhones were his. Anderson gave the agents consent to search his two iPhones, and provided his passcodes to unlock them. Based on their initial interaction with Anderson, the agents planned to transport him to their office for an interview. But Anderson eventually told the agents that he just wanted to go to court and get it over with because "[he] isn't snitching on anyone." The agents then transported Anderson to court for arraignment, but kept custody of Anderson's two iPhones.

SA Kampman subsequently reviewed the contents of Anderson's iPhones, and found several pieces of evidence that further linked Anderson to the conspiracy:

- Although Anderson's two iPhones were not the -5016 "Coody" number that King had been texting with about the packages in 2021, Anderson's iPhones nonetheless showed that the -5016 number was Anderson's old phone number, based on the following information: (1) there were multiple older saved text messages in Anderson's iPhone where he identified himself as Curtis Anderson and stated that his phone number was the -5016 number; (2) one of the email accounts in Anderson's iPhone was "curtcurt3099@gmail.com," which was the same email address listed on the subscriber information from Tracfone for the -5016 number, and Anderson's iCloud account on the

iPhones was "curtcurt4099@icloud.com"; and (3) some of the same messages found on Earl King's cell phones with the -5016 "Coody" number were also found on Anderson's iPhones, indicating that Anderson previously used the -5016 number at the time of the conspiracy, and that his previous had kept those messages as a backup when he got a new iPhone.

- Anderson had a photo on his iPhone of the shipping receipt for the eleven kilogram cocaine parcel sent from Brownsville to "Catalpa Road" in June 2021, which was geo-tagged outside the UPS/Staples store in Brownsville. It appeared that someone had sent Anderson that photo in a text message.

- The web browsing history on Anderson's iPhone showed that he was tracking the delivery status of the eleven kilogram cocaine parcel on ups.com. Also, his iPhone was receiving automated tracking update text messages from UPS about the cocaine parcel.

- Anderson' iPhones contained a significant amount of search history about Brownsville, Texas and the shipment of drugs from there, including the search terms "*brownsville texas texas drug bust*," "*brownsville tx dea*," "*staples near brownsville texas*," "*delivery service brownsville*," and "*drug bust in brownsville tx 2021*."

- Anderson's iPhones contained a significant amount of search history about cocaine trafficking, including the search terms, "*how tell a kilo of cocaine been recompressed*," "*kilo of cocaine size*," "*how to cook crack cocaine*," and "*If there are 35 ounces in a kilo, then why are there 36 ounces in cocaine kilo?*"[1]

---

[1] Some of the search terms were not date and time stamped on the iPhone extraction, but since it appears that this information was from a data backup of the phone that Anderson was using one year earlier in 2021, the evidence strongly indicates that these searches were made by Anderson during the course of the conspiracy.

- Anderson's iPhones contained a saved contact for "Rooster," under the same number that King had been texting, which was created on June 22, 2021 (three days after it was shipped from Brownsville).

- Anderson's iPhones contained several text message strings that appeared to discuss the sale of quantities of drugs:

  - A message conversation with a phone number -1722 that included the following texts between April 25, 2021 and April 28, 2021 (note that one of the UPS parcels had been shipped from Brownsville to 1745 Catalpa Road in Cleveland on April 18, 2021, and Anderson had tracked that UPS package 11 times):

    - Anderson: "What's good u still want that"

    - -1722: "Yea I'm leaving strongsville gimme a sec"

    - [Later in the conversation]:

    - Anderson: "You still want me to hold that for you"

    - -1722: "Yea"

    - Anderson: "I got another of those if u want it"

    - -1722: "I do"

  - A message conversation with a phone number ending in -1602 that included the following texts between January 27, 2021 and February 3, 2021 (note that one of the UPS parcels had been shipped from Brownsville to 7502 Central Avenue in Cleveland on January 28, 2021, and Anderson had tracked that UPS package 21 times):

    - Anderson: "Bro what's up this Coody hit me up when u come out so I can holler at you."

- [Later in conversation]

- Anderson:  "Let me know if you still want the 9"

- -1602:  "Bet"

- Anderson:  "What's good"

- -1602:  "What's the tic [ticket/price]"

- Anderson:  "I can do 15 a piece . . . 13500"

- -1602:  "12500"

- Anderson:  "I can squeeze the 13000 in for you . . . What good"

- -1602:  "I literally just did one for 12500"

- Anderson:  "Ok well hit me when u ready"

- -1602:  "Yup"

- Anderson:  "I need u to help me move this real quick"

## II.    TRIAL ISSUES AND *MOTIONS IN LIMINE*

### A.    THE WEB SEARCH HISTORY ABOUT DRUG TRAFFICKING FROM ANDERSON'S IPHONES (EXHIBITS 156 AND 159) ARE ADMISSIBLE AS *RES GESTAE*, OR ALTERNATIVELY, UNDER FRE 404(B).

As indicated above, the government intends to introduce search history found in Anderson's iPhones that connects him to this cocaine trafficking conspiracy.  Those items consist of (a) web search history about Brownsville and drug busts there (Government Exhibit 156), and (b) web search history about kilograms of cocaine and cooking crack cocaine (Government Exhibit 159).  Those exhibits are attached to this filing.

Initially, the government believes that these exhibits are *res gestae* of Anderson's involvement in this large-scale and long-running conspiracy to traffic cocaine from the U.S.-Mexico border to Cleveland.  The search terms in Exhibits 156 and 159 all deal with the exact same conduct at issue in this indictment, which is trafficking cocaine kilograms from

Brownsville to Cleveland. And given that those search terms were found on Anderson's iPhones (along with messages between Anderson and King, tracking history for the cocaine parcel, and a phone contact for "Rooster"), the government believes that these items are *res gestae* of the conspiracy. And although some of those search terms are not date-stamped, the government believes that because of their specific content as well as the fact that Anderson's iPhone contained other date-stamped messages that are within the time frame of the conspiracy, these search terms all occurred as part of the conspiracy. Accordingly, the government asks the Court to find that these search terms in Exhibits 156 and 159 are *res gestae*.

But in the event that the Court finds that the search terms in Exhibits 156 and 159 are not *res gestae*, the government submits that they are proper 404(b) evidence, because they show intent, knowledge, and lack of mistake or accident.

Federal Rule of Evidence 404(b) provides as follows:

> Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character, [but such] evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

FEDERAL RULE OF EVIDENCE 404(b). The Sixth Circuit has adopted a three-step test for determining when evidence is admissible under Rule 404(b), which requires the district court to:

> (1) make a preliminary finding as to whether sufficient evidence exists that the prior act occurred;
>
> (2) determine whether the evidence is admissible for one of the proper purposes outlined in Rule 404(b); and
>
> (3) apply Rule 403 balancing to determine whether the evidence's probative value is substantially outweighed by the danger of unfair prejudice or the other concerns embodied in Rule 403.

*United States v. Mack*, 258 F.3d 548, 553 (6th Cir. 2001).  The Sixth Circuit has repeatedly

explained that 404(b) is "a rule of inclusion rather than exclusion."  *United States v. Blankenship*,

775 F.2d 735, 739 (6th Cir. 1985); *United States v. Myers*, 102 F.3d 227, 234 (6th Cir. 1996).

These search term histories in Exhibits 156 and 159 are properly admissible under Rule

404(b) (if not as *res gestae*) because they are probative of Anderson's intent to distribute the

cocaine charged in the indictment, and are relevant to Anderson's knowledge of what was in the

parcels he tracked from Brownsville to Cleveland.  Below, the government addresses the

admissibility of these items using the Sixth Circuit's three-step test.

        1.      <u>There is sufficient evidence that the acts occurred, and that Anderson was the person responsible for those acts.</u>

"[T]he sufficiency standard for Rule 404(b) is not rigorous and only requires that the

'jury can reasonably conclude that the act occurred and that the defendant was the actor.'"

*United States v. Thompson*, 690 Fed. Appx. 302, 607 (6th Cir. 2017) (quoting *Huddleston v.*

*United States*, 485 U.S. 681, 689 (1988)).  The government's burden of proof to show that the

prior acts occurred is less than a preponderance of the evidence, but the government must still

offer more than similar acts "connected to the defendant only by unsubstantiated innuendo."  *See*

*id.* at 485 U.S. at 689.

In this case, the jury will be able to conclude that the web searches occurred, and that

Anderson was the person who searched those terms.  The iPhones that contained the search

history about Brownsville drug busts and kilograms of cocaine were recovered from Anderson

during his arrest in October 2022.  Anderson admitted that these iPhones were his, and he

provided the agents with the passcodes.  Other identifying information about Anderson

(including his driver's license and birth certificate) were also found in the iPhones.  That is more

than enough for the jury to determine that the searches occurred, and Anderson was the person

using the phone. *See United States v. Mebrtatu*, 543 Fed. Appx. 137, 140–41 (3d Cir. 2013) (text messages from cell phone properly authenticated where police seized phone from defendant's person, and texts recovered from the phone addressed the defendant and her co-defendants by name). Those facts, when considered in their totality, are sufficient for the jury to "reasonably conclude that the act occurred and that the defendant was the actor." *Thompson*, 690 Fed. App'x at 607.

> 2. The items are admissible for proper purposes, namely, to establish Anderson's intent to distribute the cocaine packages shipped during the conspiracy, and to establish his knowledge that the parcels contained drugs.

The Sixth Circuit has explained that in specific-intent charges, such as possession with intent to distribute illegal drugs, evidence of intent is a particularly apt basis for the use of Rule 404(b) evidence, regardless of the defendant's theory of the case. *See United States v. Hardy*, 643 F.3d 143, 151 (6th Cir. 2011) ("where the crime charged is one requiring specific intent, the prosecutor may use 404(b) evidence to prove that the defendant acted with the specific intent notwithstanding any defense the defendant might raise"). Accordingly, the Sixth Circuit has frequently upheld the admission of prior, uncharged instances drug dealing to show a defendant's intent to distribute. *See, e.g., Thompson*, 690 Fed. Appx. at 308; *United States v. Ayoub*, 498 F.3d 532, 548 (6th Cir. 2007); *United States v. Jenkins*, 345 F.3d 928, 938 (6th Cir. 2003); *United States v. Johnson*, 27 F.3d 1186, 1192 (6th Cir. 1994); *United States v. Feinman*, 930 F.2d 495, 499 (6th Cir. 1991); *United States v. Robison*, 904 F.2d 365, 368 (6th Cir. 1990).

Additionally, the proposed 404(b) evidence must be "substantially similar and reasonably near in time to the offenses for which the defendant is being charged." *United States v. Blankenship*, 775 F.2d 735, 739 (6th Cir. 1985). However, it "need not be identical in every detail." *United States v. Alkufi*, 636 Fed. Appx. 323, 332 (6th Cir. 2016). This temporal

limitation is not a fixed period of closeness, and can be satisfied even when the other act occurred years before the charged event. *See Ayoub*, 498 F.3d at 548 (affirming district court's admission of marijuana dealing four years prior to the charged possession with intent to distribute offense as probative of identity and intent); *United States v. Love*, 254 Fed. Appx. 511, 516 (6th Cir. 2007) ("evidence of an eight-year-old prior drug transaction is not too remote to be admitted as evidence of intent in a later drug-trafficking prosecution"); *United States v. Ismail*, 756 F.2d 1253, 1260 (6th Cir. 1985) (similar acts that occurred two to four years prior were held to be sufficiently near in time to the offense charged in the indictment); *but see. United States v. Bell*, 516 F.3d 432, 438-44 (6th Cir. 2008) (prior drug convictions more than five years before charged offense too remote); *United States v. Freeman*, 412 Fed. Appx. 735 (6th Cir. 2010) (11-year-old conviction not probative).

Applied here, the web searches about Brownsville drug busts and cocaine kilograms and crack were all found on Anderson's iPhone, seized in October 2022, indicating that they were "substantially similar and reasonably near in time to the offenses for which the defendant is being charged." *Blankenship*, 775 F.2d at 739. Indeed, some of the searches were made in 2021, which is the same timeframe as the conspiracy. And for the searches that were not date-stamped, the government believes that the jury can reasonably conclude that those searches were made during the conspiracy—or at least close in time to it—since the searches dealt with the exact facts at issue here (shipping drugs from Brownsville to Cleveland). So the acts are all close enough in time to count as Rule 404(b) evidence.

Additionally, the government anticipates that Anderson may argue that he did not know there was cocaine in the parcels he was tracking. These search terms about cocaine kilograms, cooking crack, and drug busts in Brownsville are all directly relevant to Anderson's knowledge

that the UPS parcels contained cocaine, and that it was not a mistake or accident that he tracked the parcels, which are also proper Rule 404(b) purposes.

In sum, the search items in Exhibits 156 and 159 are proper Rule 404(b) evidence, since they are within the proper time limits and being offered for a proper purpose.

### 3. The probative value of the search histories is not substantially outweighed by any risk of unfair prejudice.

The final prong for admitting 404(b) evidence requires the court to "determine whether the evidence will be substantially more prejudicial than probative before admitting the evidence under Rule 404(b)." *Thompson*, 690 Fed Appx. at 308. Although there is always a risk of unfair prejudice when jurors hear that the defendant committed a similar, uncharged crime in the past, that prejudice is generally cured by a limiting instruction. *See id.*; *Ayoub*, 498 F.3d at 548; 6th Cir. Pattern Jury Inst. Crim. § 7.13 ("Other Acts of Defendant"). Here, the risk of any unfair prejudice is low because the jury will already be hearing a considerable amount of evidence about cocaine trafficking in Brownsville, involving Rooster and Earl King. And if the Court deems these search histories in Exhibits 156 and 159 to be Rule 404(b) evidence, as opposed to *res gestae*, the government would propose a limiting instruction, consistent with the Sixth Circuit pattern instructions, which the Court can give at the time the evidence is presented, and again at the close of the trial during jury instructions.

In sum, the government submits that the search histories about Brownsville drug busts and cocaine/crack identified above from Anderson's iPhone in Exhibits 156 and 159 phone are admissible as *res gestae* of the conspiracy, or alternatively, as evidence of intent, knowledge, and lack of mistake/accident under Rule 404(b).

B.  THE GOVERNMENT INTENDS TO SELF-AUTHENTICATE BUSINESS RECORDS AND CELL PHONE EXTRACTIONS.

Pursuant to Federal Rule of Evidence 902(12) and 902(14), the government intends to self-authenticate certain records in this case.  Specifically, the government intends to self-authenticate the following business records under FRE 902(12):

- American Airlines and United Flight records

- Tracfone subscriber records for Anderson's -5016 number

- UPS records

- AT&T subscriber records for Curtis Anderson's IP address that tracked the delivery status of the parcel

Pursuant to FRE 902(14), the government intends to self-authenticate the extractions from Anderson's two iPhones, without the testimony of the examiner who conducted the extraction.  The government notes that the cell phones seized from Earl King's apartment on July 1, 2021 were not extracted, but were instead manually reviewed and screenshotted by SA Kampman, since those phones did not appear to be compatible with the extraction software.

C.  STIPULATIONS

As of the date of this filing, the parties are still discussing a stipulation to the DEA drug chemist's testimony regarding the eleven kilograms of cocaine seized on June 24, 2021.  The parties will file that stipulation if it is reached.

D.  LENGTH OF TRIAL

The government anticipates that its case-in-chief will take approximately 2-3 days to present.

Respectfully submitted,

REBECCA C. LUTZKO
United States Attorney

By:   /s/ James P. Lewis
        James P. Lewis (MD: 1412170148)
        Assistant United States Attorney
        United States Court House
        801 West Superior Avenue, Suite 400
        Cleveland, OH 44113
        (216) 622-3958
        (216) 522-7499 (facsimile)
        James.Lewis@usdoj.gov